UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALEXA ECCLES and JASON ECCLES, husband and wife,<br><br>                  Plaintiffs,<br>     v.<br><br>CITY OF LEWISTON LIBRARY BOARD OF TRUSTEES; WAYNE HOLLINGSHEAD, in his individual and official capacity; BILL CONE, in his individual and official capacity; JAN JOHNSON, in her individual and official capacities; ANDY HANSON, in his individual and official capacity; CITY OF LEWISTON, a city of the State of Idaho; and ALAN NYGAARD, in his individual and official capacity,<br><br>                  Defendants. | Case No. 3:20-cv-00119-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court are Plaintiffs' Motion for Attorneys' Fees and Nontaxable Costs (Dkt. 12) ("Motion for Fees") and Defendants' Motion for Extension of Time to File Response (Dkt. 15) ("Motion for Extension"). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons outlined below, the Court finds good cause to GRANT in PART and DENY in PART Plaintiffs' Motion for Fees. The Court awards initial attorneys' fees of $37,507.00, and costs of $3,581.95. As outlined below, the Court will allow additional fees for the time spent preparing Plaintiffs' Reply brief in support of the Motion for Fees. The Court also finds good cause to GRANT Defendants' Motion for Extension.

## II. BACKGROUND[1]

Plaintiff Alexa Eccles was the Library Director for the City of Lewiston (the "City") from July 2, 2012 until July 31, 2018. Throughout this period, Eccles met or exceeded standards on her performance reviews. However, shortly after she started in 2012, Eccles was physically assaulted by a City Councilman. Although she reported the incident to the City's HR Director, no remedial actions were taken. Throughout the next six years, Eccles made several complaints of sexual harassment, including allegations that she had suffered additional physical assaults by City employees. While Eccles reported each violation, the City and the Library Board repeatedly failed to take any action. When the situation escalated in 2018, the Library Board initially cut the scope of Eccles' duties, later put her on administrative leave, and, shortly thereafter, summarily terminated her employment without a hearing or any other constitutionally required due process.

Pursuant to Tile VII of the Civil Rights Act of 1964, the Idaho Human Rights Act, and 42 U.S.C. § 1983, Eccles and her husband, Jason Eccles ("Plaintiffs"), filed the instant suit against the City, the City's Library Board of Trustees, individual members of the

---

[1] The following facts are alleged in Eccles' Complaint. Although the case ultimately settled, Defendants expressly deny any liability. Dkt. 11.

Library Board of Trustees Wayne Hollingshead, Bill Cone, Jan Johnson, and Andy Hanson, and City Manager Alan Nygaard ("Defendants") on March 6, 2020. Shortly after the suit was filed, Defendants extended an offer of judgment in the "amount of Two Hundred Thousand Dollars ($200,000), exclusive of reasonable attorney's fees and costs incurred by Plaintiffs in furtherance of their claims as of the date of this offer, as determined by the Court." Dkt. 10, Ex. A. Plaintiffs accepted the offer, and the Court entered Judgment against the Defendants on June 12, 2020. Dkt. 11.

Plaintiffs thereafter filed their Motion for Fees, seeking an award of attorneys' fees in the amount of $80,000.00, and costs in the amount of $3,581.95. Dkt. 12-1, at 12. Defendants failed to respond to the Motion for Fees by their July 17, 2020 deadline. However, on July 28, 2020, Defendants filed a Response, along with the Motion for Extension. Dkt. 14; Dkt. 15. Plaintiffs thereafter replied to Defendants' late response, but also opposed the Motion for Extension. Dkt. 18.

### III. ANALYSIS

Because the Court's decision on the Motion for Extension will determine whether the Court addresses Defendants' arguments in opposition to the Motion for Fees, the Court turns first to the Motion for Extension.

### A. Motion for Extension (Dkt. 15)

Defendants seek an extension to their response deadline pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), which permits the Court to extend time, for good cause, on a motion made after the time for filing has expired by a party who failed to act due to excusable neglect.

MEMORANDUM DECISION AND ORDER - 3

*1.  Legal Standard*

The Ninth Circuit has held that, for purposes of Federal Rule of Civil Procedure 6(b), "excusable neglect" must be judged by the standard set forth in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). *See, e.g., Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (noting "this court [has] held that the Supreme Court's analysis of 'excusable' neglect in *Pioneer* is applicable to Rule 6(b)[.]" (citation omitted)). Under this standard, the Court generally considers four factors to determine whether neglect is excusable: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.[2] *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000) (citing *Pioneer*, 507 U.S. at 395). Like all of the Federal Rules of Civil Procedure, Rule 6(b)(1) is to be "liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) (internal quotation marks and citations omitted).

*2.  Analysis*

Defendants contend the ECF notice for the Motion for Fees was erroneously sent to defense counsel's former legal assistant, Ben Yesland. Dkt. 16, ¶ 5. Mr. Yesland left defense counsel's firm so long ago that his email address is "'dead' in the sense that it is

---

[2] These factors are not exclusive. *Briones*, 116 F.3d at 381. Instead, excusable neglect is a somewhat "elastic concept" which may be found where the relevant circumstances reveal inadvertent delays, mistakes, or carelessness. *Id.*

MEMORANDUM DECISION AND ORDER - 4

not forwarded to anyone else at the firm." *Id*. Because initial ECF activity in this case occurred during COVID-19 "related shut-downs and disruptions, and because so little litigation activity had occurred in this case at the time the settlement was reached," it escaped defense counsel's attention that ECF emails were going to the old email address for Mr. Yesland and not to defense counsel's current legal assistant, Laurie Davis. *Id*. Although defense counsel did receive the ECF email notification, he was out of the office at the time and, given voluminous emails in other cases, did not notice the ECF email when he returned to the office several days later. *Id*. ¶ 4.

Defense counsel contends he was completely unaware that Plaintiffs had filed their Motion for Fees until he contacted Plaintiffs' counsel on July 28, 2020, to inquire if Plaintiffs had received Defendants' settlement check for $200,000.00. *Id*. ¶ 6. Defense counsel also inquired about the status of the Motion for Fees and was dismayed when he learned it had not only already been filed, but that Defendants' response deadline had also already passed. *Id*. Defense counsel filed the Motion for Extension and Defendants' Response to the Motion for Fees the same day.

Plaintiffs argue the Court should deny the Motion for Extension because Defendants set forth only the reason for delay, without addressing any of the other *Pioneer* factors. Dkt. 18, at 6. Although the Court agrees that Defendants should have addressed the *Pioneer* factors, the Court is not relieved of its duty to apply the *Pioneer* test when a party requesting an extension fails to do so. *Bateman*, 231 F.3d at 1224. After conducting the "equitable analysis" required under *Pioneer*, the Court finds Defendants' error in filing a late response was due to excusable neglect. *Id*.

First, defense counsel filed Defendants' Response to the Motion for Fees less than two weeks after the July 17, 2020 deadline for doing so. The prejudice to Plaintiffs was accordingly minimal. *Bateman*, 231 F.3d at 1225 (finding four-week delay in filing opposition to motion for summary judgment was insufficient prejudice to justify denial of relief under *Pioneer*); *see also Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (rejecting claim of prejudice from two-week delay between entry of default judgment and filing Rule 60 motion because "we perceive no disadvantage to Augusta beyond that suffered by any party which loses a quick victory").

Further, Plaintiffs do not identify any prejudice they would suffer by allowing the Motion for Fees to be decided on the merits. The Ninth Circuit has held "[p]rejudice requires greater harm than simply that relief would delay resolution of the case." *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009). Here, given a significant backlog of criminal cases due to the COVID-19 pandemic, Defendants' late response was filed long before the Court could turn to the Motion for Fees. As such, Plaintiffs have not suffered even a delayed resolution of their motion as a result of Defendants' late response. The first *Pioneer* factor weighs in favor of granting Defendants' requested extension.

The second factor considers the length of the delay and its potential impact on the proceedings. What constitutes reasonable delay depends on the facts of each case, "taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Id.* at 1196–97 (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)). As mentioned, Defendants filed their late response less than two weeks after it was due, and also filed

their Response the very day defense counsel realized he had missed Plaintiffs' Motion for Fees. Dkt. 16, ¶ 6. The extremely short delay in this case weighs in favor of allowing an extension. *Bateman*, 231 F.3d at 1225 (holding one-month delay "was still not long enough to justify denying relief."); *Lemoge*, 587 F.3d at 1197 (finding seven-month delay was reasonable).

The third factor considers the reason for the delay. Although here the reason for delay was a mistake by defense counsel in failing to update his legal assistant's email address with ECF, and another mistake in overlooking his own ECF notification, excusable neglect "covers cases of negligence, carelessness and inadvertent mistake." *Bateman*, 231 F.3d at 1224. The Ninth Circuit has held even "seriously" negligent conduct can still constitute excusable neglect. *Lamoge*, 587 F.3d at 1197. The Court finds the minor mistakes which led to Defendants' late response constitute excusable neglect.

Finally, there is no evidence that Defendants acted in bad faith. Bad faith may be found when the movant acts with "deviousness or willfulness." *Bateman*, 231 F.3d at 1225. It certainly does not appear from the facts before the Court that Defendants filed a late response to the Motion for Fees for a strategic reason or with any bad intent. Rather, the facts suggest that Defendants inadvertently missed their response deadline and immediately filed a Response as soon as they became aware of the error. This fourth factor, therefore, also weighs in favor of granting Defendants' requested extension.

Because all four *Pioneer* factors weigh in favor of a finding of excusable neglect, the Court GRANTS Defendants' Motion for Extension, and considers Defendants' Response to the Motion for Fees.

**B. Motion for Fees (Dkt. 12)**

*1. Legal Standard*

Generally speaking, each party to a lawsuit bears its own attorney's fees unless Congress has provided otherwise through statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Two federal statutes allow for attorney's fees in this case. A court may award reasonable attorneys' fees, including litigation expenses and costs, to a prevailing party in an action commenced under Title VII, 42 U.S.C. § 2000e–5(k). *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 755 (1989). Further, in actions under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). "In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case." *Id.* at 578.

Courts within the Ninth Circuit apply the "lodestar" approach to determine appropriate fee awards. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) ("The lodestar approach has achieved dominance in the federal courts and is the guiding light of the Supreme Court's fee-shifting jurisprudence") (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). The lodestar amount is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable

hourly rate. *Hensley*, 461 U.S. at 433. "The product of this computation—the lodestar figure—is a presumptively reasonable fee under 42 U.S.C. § 1988." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (internal quotation marks and citation omitted).

A court has discretion to adjust the lodestar figure upward or downward based on twelve factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). The Ninth Circuit continues to use the twelve *Kerr* factors when assessing attorneys' fee awards. *See, e.g., Morales v. City of Rafael*, 96 F.3d 359, 364 (9th Cir. 1996) ("After making [the lodestar] computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."); *Stanger v. China Elec. Motor, Inc*., 812 F.3d 734, 740 (9th Cir. 2016) (noting the decision to enhance or reduce the lodestar under the *Kerr* factors is within the district court's discretion).

The prevailing party has the burden of submitting evidence to establish the claimed rates and hours expended on the litigation are reasonable. *Blum v. Stenson*, 465 U.S. 886,

897 (1984). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–1398 (9th Cir. 1992).

Ultimately, the district court "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citations omitted). "The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Id*.

With these principles in mind, the Court turns to Plaintiffs' fee request.

2.  *Analysis*

a.  Attorneys' Fees

Plaintiffs' counsel billed a total of 92.90 hours of attorney time at $350.00 an hour, and 41.60 hours of paralegal time at $120.00 an hour.[3] Without an enhancement, this results in a total of $37,507.00 in fees under the lodestar calculation. Defendants do not dispute that Plaintiffs are the prevailing party in this case or that they are entitled to attorneys' fees and costs. *See generally*, Dkt. 14; *see also Carbonell v. I.N.S.*, 429 F.3d 894, 899 (9th Cir. 2005) ("We have also found that a litigant prevailed when he entered into a legally enforceable settlement agreement."). Nor do Defendants contest the $350.00 hourly rate for Plaintiffs' attorney, the $120.00 hourly rate for Plaintiffs' paralegal, or the number of

---

[3] Plaintiffs' counsel reduced the total amount of hours billed to account for duplicate work and/or tasks that took longer than usual. Dkt. 12-1, at 7 n. 2.

hours spent on the case prior to the offer of judgment.

The Court has considered the declarations submitted by Plaintiffs' counsel, April Linscott; their paralegal, Shannon James, and Larry Beck, another North Idaho employment law attorney, regarding the prevailing market rate for attorneys and paralegals. Dkt. 12-2; Dkt. 12-3; Dkt. 12-4. Given the skill, experience, and reputation of Linscott and James, the successful result achieved in this case, and the contingency nature of Plaintiffs' fee agreement with counsel, the Court finds the requested hourly rates of $350.00 for attorney time, and $120.00 an hour for paralegal time, are reasonable.

The Court has also considered the detailed billing records submitted by Plaintiffs' attorney and paralegal. Dkt. 12-2, Ex. B. Ms. Linscott represented Plaintiffs for more than two years, including through the post-discharge administrative process, early mediation, and settlement negotiations. The time spent on such representation was not excessive, and a paralegal with a lower hourly rate was used effectively and efficiently when possible. Upon review of counsel's thorough billing records, and in the absence of any evidence or argument to the contrary, the Court finds that the number of hours billed prior to the offer of judgment are reasonable. However, Defendants suggest Plaintiffs are not entitled to recover for any time billed after the offer of judgment was issued on April 17, 2020, and also contend a lodestar multiplier is inappropriate. The Court addresses each argument in turn.

     *i.   Time billed after the offer of judgment*

As a general rule, "time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable." *Clark v. City of Los Angeles*, 803 F.2d 987,

992 (9th Cir.1986) (citations omitted). Yet, a settlement offer may be conditioned upon the waiver of such fees. *Evans v. Jeff D.*, 475 U.S. 717, 737–38 (1986). Accepting such an offer constitutes a waiver, but only if the waiver is "clear and unambiguous*." Erdman v. Cochise Cty., Ariz.*, 926 F.2d 877, 880 (9th Cir. 1991) (citation omitted). The "usual rules of contract construction" apply to interpreting the terms of a Rule 68 settlement offer of judgment in a § 1983 case.[4] *Herrington v. Cty. of Sonoma*, 12 F.3d 901, 907 (9th Cir. 1993). Therefore, any "ambiguities will be construed against the offeror as the drafting party[.]" *Id*. Further, because a Rule 68 offer is non-negotiable, the defendant must bear the brunt of any uncertainty. *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 834 (9th Cir. 1997).[5]

Defendants suggest the offer of judgment accepted by the Plaintiffs "clearly indicated that it was for $200,000, plus costs and fees incurred by Plaintiffs up to the date the offer of judgment was issued." Dkt. 14, at 3. Specifically, the offer of judgment provided:

> Defendant City of Lewiston, by and through its undersigned counsel, offers to allow judgment to be entered against it in the aggregate amount of Two Hundred Thousand Dollars ($200,000) exclusive of reasonable attorney's fees and costs incurred by Plaintiffs in furtherance of their claims as of the date of this offer, as determined by the Court.

Dkt. 10, Ex. A.

---

[4] Federal Rule of Civil Procedure 68 provides that, at least 14 days before the date set for trial, "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. Proc. 68(a). In *Marek v. Chesny*, 473 U.S. 1, 9 (1985), the Supreme Court held "costs" in a § 1983 action should include attorneys' fees.

[5] Once an offer of judgment is made, "it is non-negotiable; it is either accepted, in which case it is automatically entered by the clerk of the court, or rejected, in which case it stands as the marker by which the plaintiff's results are ultimately measured." *Nusom*, 122 F.3d at 834. As such, a defendant appropriately bears the risk of any ambiguity in the offer. *Id*.

Plaintiffs' attorney recorded 27.3 hours of time, and their paralegal recorded 11.1 hours of time, after the offer of judgment was extended on April 17, 2020. Dkt. 12-2, Ex. B. Given their respective hourly rates of $350.00 and $120.00, Defendants suggest the Court should subtract $10,887.00 from the $37,507.00 lodestar total.[6] Dkt. 14, at 4.

Plaintiffs counter that the offer of judgment did not clearly and unambiguously waive or limit attorney fees. While Defendants read the limitation "as of the date of this offer" as cutting off the incurrence of attorney fees and costs as of the date of the offer of judgment, Plaintiffs argue the limitation can just as easily be construed as limiting their *claims* to those which had been made against the Defendants as of the date of the offer of judgment. Dkt. 18, at 5. Plaintiffs contend this is a reasonable interpretation because settlement of a case usually settles all claims that were made as of the date of the offer of judgment, while any future claims would not be included. *Id*.

Although the Court finds the issue to be a close call, it must ultimately agree with Plaintiffs. The Ninth Circuit interpreted similar provisions in *Guerrero v. Cummings*, 70 F.3d 1111 (9th Cir. 1995), and *Holland v. Roeser*, 37 F.3d 501 (9th Cir. 1994), which guide the result in this case. In *Guerrero*, the Court found a provision which offered a $1,500 judgment "plus reasonable attorney fees and costs incurred by this plaintiff prior to the date of this offer in an amount to be set by the court," unambiguously limited plaintiff's fees and costs to those incurred by the plaintiff prior to the date of the offer of judgment.[7]

---

[6] (27.3 x 350) + (11.1 x 120) = $10,887.00.

[7] The Ninth Circuit rejected the Guerreros' argument that the offer was ambiguous because it allowed costs and fees "in an amount set by this court," thus leaving open the possibility that the court would choose to award an amount that included post-settlement fees. 70 F.3d at 1113. In so holding, the Court explained

*Guerrero*, 70 F.3d at 1113.

By contrast, the *Holland* court found that an offer of judgment that provided for "'costs now accrued and reasonable attorney fees as determined by the court'" was ambiguous. *Holland*, 37 F.3d at 503. In so holding, the *Holland* court explained if the offer had simply referred only to "costs now accrued" it would likely constitute a clear and unambiguous limitation on attorneys' fees. However, because the offer contained the "additional, ambiguous language 'costs now accrued *and reasonable attorney fees as determined by the court*[,]' [o]ne could certainly conclude this fee provision is broader than the cost provision and might extend to those fees not already accrued." *Id*. at 504 (emphasis in original).

Similarly, in this case, had the offer of judgment limited "reasonable attorney's fees and costs incurred by Plaintiffs" to "the date of this offer," the offer of judgment would likely constitute a clear and unambiguous limitation of any fees incurred after the date of the offer. But because the offer of judgment also included the additional language, "reasonable attorney's fees and costs incurred by Plaintiffs *in furtherance of their claims as of the date of this offer*," the limitation is no longer clear and unambiguous. Since "as of the date of this offer" could apply to either the reasonable attorneys' fees and costs incurred by Plaintiffs *or* to Plaintiffs' existing claims, or to both, the offer of judgment is ambiguous. *Guerrero*, 70 F.3d at 1113 (noting the offer of judgment at issue in *Holland* was ambiguous because the term "now accrued" modified "costs," but did not clearly modify "reasonable

only the reasonableness of the fees incurred prior to the offer of judgment was left to the court to determine. *Id*.

MEMORANDUM DECISION AND ORDER - 14

attorney fees"). Because any ambiguities must be construed against the drafter, the Court finds Defendants' offer of judgment did not limit the attorneys' fee award to those fees incurred prior to the offer.[8] *Holland*, 37 F.3d at 504. Thus, the Court will allow the $10,887.00 in fees incurred after the offer of judgment and concludes the initial lodestar calculation of $37,507.00 is reasonable.[9]

In addition, Plaintiffs suggest that the $37,507.00 lodestar fee should be increased to account for time incurred preparing their Reply in support of the Motion for Fees. Dkt. 18, at 6. The Court agrees. It is "well established that time spent in preparing fee applications under 42 U.S.C. § 1988 is compensable." *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996). As such, the Court will increase the initial lodestar calculation to account for time spent preparing Plaintiffs' Reply in support of the Motion for Fees if Plaintiffs submit a Motion to Supplement Fees, with appropriate documentation for the hours spent preparing the Reply, within fourteen (14) days of the date of this order.[10]

### ii. Lodestar enhancement

There is a "strong presumption" that the lodestar figure represents a reasonable fee.

---

[8] Plaintiffs contend a second ambiguity exists in the offer of judgment because, even if read as Defendants suggest, the offer of judgment only cuts off fees and costs *incurred* after the date of the offer of judgment. Dkt. 18, at 5 (emphasis in original). Plaintiffs argue they incurred all fees and costs associated with their representation (including representation in the fee and cost determination to be made by the court) at the time they signed the contingency fee agreement on September 28, 2018—long before the April 17, 2020 offer of judgment. Because the Court finds the offer of judgment did not unambiguously limit Plaintiffs' attorneys' fees to those accrued as of the date of the offer, it does not further address this argument.

[9] The Court has reviewed the billing records for the time spent after the offer of judgment, and finds such time is reasonable and is not excessive.

[10] If Plaintiffs file a Motion to Supplement Fees, Defendants' response, if any, shall be due within twenty-one (21) days after the motion is filed. Plaintiffs' reply, if any, shall be due within fourteen (14) days of Defendants' response. Dist. Idaho Loc. Rule 7.1(c)(1), (b)(3).

*Morales*, 96 F.3d at 363 n. 8. While the lodestar calculation may be adjusted based on the *Kerr* factors, upward or downward adjustments are the exception rather than the rule since the lodestar amount is presumptively reasonable. *Jordan v. Multnomah Cty*., 815 F.2d 1258, 1262 (9th Cir. 1987)[11]; *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("[W]e have repeatedly said that enhancements may be awarded in 'rare' and 'exceptional' circumstances" (quoting P*ennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("*Delaware Valley I*")). Further, many of the *Kerr* factors are subsumed within the lodestar calculation and may not serve as an independent basis for adjusting fee awards.[12] *Perdue*, 559 U.S. at 553. Where, as here, a party seeks a fee award greater than the lodestar calculation, that party has "the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Id.* at 546.

Plaintiffs seek $80,000.00 in attorneys' fees—approximately double the lodestar calculation. Plaintiffs primarily request this amount because they must pay their attorneys $80,000.00 (or 40% of their total recovery) under their contingency fee arrangement. Specifically, Plaintiffs' Contingent Fee Agreement provides:

> CLIENT agrees to pay ATTORNEYS for professional services the greater of the following:

[11] In *Jordan*, the Ninth Circuit cited *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974) for the 12-factor test. The Ninth Circuit adopted the *Johnson* guidelines in *Kerr*, 526 F.2d at 70.

[12] The Supreme Court has held the "lodestar figure includes most, if not all of the [*Kerr*] factors constituting a reasonable attorney's fee." *Perdue*, 559 U.S. at 553 (internal quotation marks and citations omitted). Factors courts have specifically deemed subsumed within the lodestar calculation include the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, the results obtained, and the contingency nature of the attorney fee agreement. *Id*.; *see also Blum*, 465 U.S. at 898–900; *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).

a) Forty percent (40%) of all monies received or recovered from any source from the date of execution of this agreement up to thirty (30) days prior to a court scheduled civil trial whether such monies are characterized as settlement funds, general, special, punitive or exemplary or attorney fee and cost award;

b) Forty-five percent (45%) of all monies received or recovered from any source within thirty (30) days of a court scheduled trial, during trial or after trial; whether such monies are characterized as settlement funds, general, special, punitive or exemplary or attorney fee and cost award;

c) Fifty percent (50%) of all monies received or recovered from any source after the beginning of any appeal whether such monies are characterized as settlement funds, general, special, punitive or exemplary or attorney fee and cost award[.]

Dkt. 12-2, Ex. A.

The Contingent Fee Agreement also states:

ATTORNEYS shall agree to advance all necessary fees, costs and expenses incidental to handling of said matter. ATTORNEYS shall, however, be reimbursed by CLIENT for any and all costs and expenses incurred by ATTORNEYS for and on behalf of CLIENT in the representation of CLIENT. Said reimbursement shall be deducted from the CLIENT'S net recovery, if sums are collected or received.

*Id.*

Pursuant to these two provisions, and given the total settlement of $200,000.00, Plaintiffs must pay $80,000.00 in attorneys' fees and $3,581.95 in costs for this matter. Dkt. 12-1, at 3. Plaintiffs ask the Court to adjust the lodestar in this case because they should not be punished for accepting an early settlement offer, and also suggest the prevailing market rate should be what they contracted to pay in exchange for the legal services they were provided.

Defendants counter that "a fee award under fee shifting statutes may not be based on a contingency fee agreement or the contingent nature of the case." Dkt. 14, at 5 (citing

MEMORANDUM DECISION AND ORDER - 17

*City of Burlington v. Dague*, 505 U.S. 557 (1992)). In *Dague*, the Supreme Court explicitly held that enhancement for contingency is not permitted under fee-shifting statutes. 505 U.S. at 565 ("[W]e see a number of reasons for concluding that no contingency enhancement whatever is compatible with the fee-shifting statutes at issue.")[13] The Ninth Circuit subsequently held, "[g]iven the Court's holding in *Dague*, it is clear that contingency multipliers are no longer permitted under § 1988." *Gates*, 987 F.2d at 1403.

Plaintiffs ask the Court to nonetheless adjust the lodestar because "all contingency cases need not be treated the same. In the ordinary case, the lodestar fee is greater than the contingency fee." Dkt. 12-1, at 9. In this case, the lodestar amount is less than half of the contingency fee. If Plaintiffs are required to reimburse their attorneys for the $42,493.00 difference between the lodestar amount and their $80,000.00 obligation under the Contingency Fee Agreement, their recovery will be substantially reduced.

Plaintiffs suggest if they "are not compensated for the prevailing market rates for which they are contractually obligated to pay, then there is a disincentive to settle cases earlier rather [than] later, when fair settlement offers are made." Dkt. 12-1, at 9. Plaintiffs also argue Defendants "should bear the amount of attorney fees for which the plaintiffs are contractually obligated to pay." Dkt. 18, at 4. Although the Court certainly understands Plaintiffs' predicament, and would like to award the full contingency amount so their settlement is not substantially reduced, the Supreme Court rejected a similar argument in

---

[13] *Dague* addressed fees permitted under the Solid Waste Disposal and Federal Water Pollution Control Acts, and not § 1988. However, the *Dague* Court expressly stated the language of the Solid Waste Disposal and Federal Water Pollution Control Acts "is similar to that of many other federal fee-shifting statutes; our case law construing what is a 'reasonable' fee applies uniformly to all of them." *Dague*, 505 U.S. at 562 (internal citations omitted).

MEMORANDUM DECISION AND ORDER - 18

*Venegas v. Mitchell*, 495 U.S. 82, 89 (1990).[14]

In *Venegas*, the Supreme Court considered a plaintiff's argument that he should be protected from paying his attorney more than the reasonable attorney's fee awarded by the trial court. *Id*. Like Plaintiffs in this case, plaintiff in *Venegas* suggested that "paying the contingent fee in full would greatly reduce his recovery and would impose a cost on him for enforcing the civil rights laws, a cost that the defendant should pay." *Id*. The Court rejected this argument, explaining that no Supreme Court cases have indicated that fee-shifting statutes such as § 1988 protect "plaintiffs from having to pay what they have contracted to pay, even though their contractual liability is greater than the statutory award that they may collect from losing opponents." *Id*. at 90. Instead, § 1988:

> controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order.

*Id*.

Plaintiffs also argue that an enhancement is appropriate because the market for employment attorneys, and, more specifically, for employment attorneys willing to take a case on a full contingency basis, is scarce in North Idaho and Spokane.[15] Plaintiffs suggest

---

[14] *Venegas* involved an attorney's attempt to obtain a lien on his former client's judgment to obtain the fees purportedly owed to the attorney under his contingency-fee agreement with the client, and thus involved a both a different procedural posture than the instant case, as well as the separate issue of whether § 1988 requires a court to invalidate a contingency-fee agreement that allows a lawyer to collect a fee which exceeds the statutory fee award. *Id*. at 85. Nonetheless, the Court finds the analysis in *Venegas* analogous to Plaintiffs' arguments here because *Venegas* illustrates the distinction between a reasonable statutory fee award owed by defendants and the amount plaintiffs are required to pay under a contingency fee agreement.

[15] In *Guam Soc'y of Obstetrics and Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) ("*Ada*"), the Ninth Circuit held the unavailability of local counsel can support an enhancement of the lodestar. Although this Court has considered Plaintiffs' claims regarding the unavailability of employment counsel in North

the 40% contingency fee agreement *is* the market rate in employment law cases in North Idaho and that the lodestar must be adjusted upward to account for this. Dkt. 12-1, at 10–11. Again, although the Court takes the point, the Ninth Circuit rejected this type of argument in *Gates*, 987 F.2d at 1403 (abrogating *Fadhl v. City & Cty. of San Francisco*, 859 F.2d 649, 650 (9th Cir. 1988)).

In *Fadhl*, the Ninth Circuit affirmed a multiplier of 2.0 to "reflect the difference in market treatment accorded to contingency cases in San Francisco," and to adjust for the "severe difficulties" a plaintiff would have faced "in obtaining an attorney without a contingency fee agreement that held out the possibility of substantial enhancement over the ordinary hourly rate." 859 F.2d at 650. In *Gates*, the Ninth Circuit reviewed a lower court's holding, based on *Fadhl*, that a 2.0 multiplier was appropriate because of the "documented market custom of providing enhancers, the necessity of a multiplier in attracting counsel, and their reliance upon a potential enhancer in accepting representation." 987 F.2d at 1402. Given the Supreme Court's holding in *Dague*, the *Gates* court reversed the portions of the district court's order awarding a 2.0 contingency multiplier to account for such factors. *Id.* at 1403. In so holding, the *Gates* court implicitly rejected the theory that a contingency multiplier is appropriate in cases where the "market rate" is the contingency rate. *Id.*

---

Idaho, including the declarations of their attorney and attorney Larry Beck, the circumstances in this case do not rise to the level of the extraordinary circumstances at issue in *Ada*, where plaintiff's counsel was subject to death threats due to her involvement in a controversial abortion case. 100 F.3d at 698 ("[A]n enhancement is clearly necessary to a reasonable fee where the district court finds that the case is of the type that attorneys are unwilling to take for fear of ostracization and out of concern for their personal safety.").

The *Dague* decision itself also further undermines Plaintiffs' argument that "the prevailing market rate for a plaintiff's employment/civil rights case is a 40% contingent fee." Dkt. 18, at 4. In *Dague*, the Supreme Court rejected the plaintiff's argument that a contingency arrangement may be a basis for enhancement if a party can "establish that without the adjustment for risk he would have faced substantial difficulties in finding counsel in the local or other relevant market." 505 U.S. at 564 (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 733 (1987) ("*Delaware Valley II*"). In rejecting this argument, the *Dague* Court explained "we perceive no [] basis, fairly derivable from the fee-shifting statutes, by which contingency enhancement, if adopted, could be restricted to fewer than all contingent-fee cases. And we see a number of reasons for concluding that no contingency enhancement whatever is compatible with the fee-shifting statutes at issue." 505 U.S. at 565. Such reasons included that an attorney operating on a contingency-fee basis "pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement under a fee-shifting statute would in effect pay for the attorney's time (or anticipated time) in cases where his client does not prevail." *Id*. In addition, the model proposed by both the plaintiff in *Dague* and by Plaintiffs here would "concoct a hybrid scheme that resorts to the contingency-fee model to increase a fee award but not to reduce it." *Id*. at 566. The Supreme Court denounced such a scheme, noting it would not result in the determination of a reasonable fee.[16] *Id*.

---

[16] Plaintiffs note the Supreme Court has suggested an enhancement may be appropriate where the method used in determining the hourly rate does not adequately measure the attorney's true market value. Dkt. 18,

Here, the effect of Plaintiffs' requested enhancement would be to increase the hourly rate—for both their attorney and paralegal—to approximately $595.00 an hour.[17] Other than the contingency agreement, Plaintiffs do not point to anything in the record to show that this is an appropriate figure for the relevant market. In the absence of authority for Plaintiffs' position that the contingency fee should be considered the prevailing market rate, and given the Supreme Court's foreclosure of the aforementioned argument in *Dague*, the Court cannot adjust the lodestar figure to account for the contingency agreement.

    b.  <u>Costs</u>

Under 42 U.S.C. § 1988, the prevailing party "may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee-paying client.'" *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Plaintiffs incurred a total of $3,581.95 in costs, including, *inter alia*, legal research, copies, mediation fees, and travel. Dkt. 12-1, at 3. Defendants do not object to any of these costs, and the Court finds such expenses are reasonable and recoverable. The Court awards $3,581.95 in costs.

///

///

---

at 3 (citing *Perdue*, 559 U.S. at 555). However, the *Perdue* Court's statement did not refer to contingency arrangements, but instead explained an hourly rate may not reflect an attorney's true market value "if the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar) or perhaps only a few similar factors." *Id*. The *Perdue* Court noted, "[i]n such a case, an enhancement may be appropriate so that an attorney is compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes." *Id*. Here, Plaintiffs' attorney's market rate is actually less in cases that are not governed by § 1988. Dkt. 12-2, ¶¶ 10, 14. An enhancement for the "market value" referenced in *Perdue* does not appear appropriate under such circumstances.

[17] Together, Linscott and James spent a total of 134.5 hours on this case. The requested fee award of 80,000 ÷ 134.5 = 594.79.

## IV. ORDER

NOW, THEREFORE, the Court HEREBY ORDERS:

1. The Motion for Fees (Dkt. 12) is **GRANTED in PART and DENIED in PART**.

   Plaintiffs are awarded $37, 507.00 in initial attorney's fees and $3,581.95 in costs;

   a. In addition, Plaintiffs are entitled to recover for the fees incurred in drafting their Reply in Support of the Motion for Fees. To recover such fees, Plaintiffs shall submit a Motion to Supplement the Motion for Fees within fourteen (14) days of the date of this order, with the regular briefing schedule to follow;

2. The Motion for Extension (Dkt. 15) is **GRANTED**.

DATED: January 27, 2021

David C. Nye
Chief U.S. District Court Judge